UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BATTS,<br><br>        Plaintiff,<br><br>    v.<br><br>BANKERS LIFE & CASUALTY COMPANY,<br><br>        Defendant. | Case No. 13-cv-04394-SI<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 61 |

Defendant Bankers Life and Casualty Company ("Bankers") moves for summary judgment against plaintiff Timothy Batts. Defendant's motion was scheduled for hearing on January 16, 2015. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant Bankers' motion for summary judgment.

## BACKGROUND

Plaintiff alleges that he and defendant entered into a written employment contract on May 7, 2011. Docket No. 41, SAC ¶ 2. Plaintiff alleges that defendant violated the terms of this employment agreement by terminating the contract without cause and failing to give him notice of its intent to terminate the contract prior to termination. *Id.* at ¶ 7.[1] Plaintiff also alleges that defendant interfered with his economic relationships with his clients and made misrepresentations

---

[1] The paragraphs in the complaint are inconsistently numbered. Paragraph 8 is numbered as paragraph 6, and the counting begins from there. Additionally, the complaint skips from paragraph 19 to paragraph 23. This citation refers to the second paragraph numbered 7, on page 3 of the SAC. All citations to the SAC in this order will correspond to the paragraphs as they are actually numbered in the complaint.

to him regarding renewal commissions and other deferred compensation. *Id*. at ¶¶ 15, 24-26.

On August 14, 2013, plaintiff filed a complaint against Bankers Life in Alameda Superior Court, alleging causes of action for: (1) breach of contract, (2) fraud, and (3) intentional interference with a prospective economic advantage. Compl. at 3-6. On September 23, 2013, defendant removed the action from state court to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. Docket No. 1, Notice of Removal.

On November 6, 2013 the Court granted defendant's motion for a more definite statement and granted plaintiff leave to amend. Docket No. 22. On December 6, 2013 plaintiff filed his first amended complaint, alleging the same three causes of action as the original complaint. Docket No. 24, FAC. On January 27, 2014, the Court granted in part and denied in part defendant's motion to dismiss. Docket No. 31. On February 21, 2014, plaintiff filed the SAC alleging the same three causes of action; on March 7, 2014, defendant answered. Docket Nos. 41-42.

By the present motion, defendant moves for summary judgment. Docket No. 61, Def. Mot.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to

"set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

### I.   Breach of Contract

Plaintiff asserts that defendant breached his employment contract by failing to give him notice of its intent to terminate his contract without cause prior to actual termination. SAC ¶ 7. Paragraph 22(a) of the contract states: "[e]ither party may terminate this contract at will, without cause, by giving notice to the other party of the intention to terminate this contract." SAC Ex. 1, Agent Contract. Plaintiff alleges that on or about August 15, 2011, defendant orally advised him that the contract was terminated. SAC ¶ 8.

In its January, 2014 order on defendant's motion to dismiss, this Court found that although the contract does not specify the precise amount of advance notice required, paragraph 22(a) does require advance notice of termination, not merely notice contemporaneous with termination. Docket No. 31 at 6. Defendant argues that even assuming *arguendo* that it breached the contract, this cause of action is barred by the doctrine of res judicata,[2] and because plaintiff has presented insufficient evidence of damages.

Both parties agree that the Agent Contract allows for termination without cause. Plaintiff contends that he suffered damages arising from defendant's failure to provide "notice" of termination as required by paragraph 22(a) of the contract. Specifically, plaintiff contends that defendant's failure to provide notice (1) made it impossible for him to retrieve his client database, (2) prevented him from having a "warm market,"[3] and (3) ultimately prevented plaintiff from being hired by another insurance company for 24 months. Docket No. 62, Pl. Opp'n at 9. However, as Batts acknowledges, the dissipation of his warm market and his inability to find gainful employment as an insurance broker were due to defendant's enforcement of certain terms of the employment agreement[4] -- *not* due to failure to provide notice of termination:

> **Q:** But you didn't get appointed with anybody else; right?
>
> **A:** Because I didn't have a warm market. It was gone, it was destroyed, it was eviscerated.
>
> **Q:** It was eviscerated because why?
>
> **A:** Because under the threat of legal action, including injunctive relief, as well as monetary damages, Bankers said I couldn't contact prior policy holders to have them replace, relinquish, lapse, or

---

[2] Defendant argues that res judicata bars all of plaintiff's claims; however, for the reasons stated in the Court's prior order, this doctrine does not preclude plaintiff from proving claims of fraud and intentional interference with prospective economic relations. *See* Docket No. 31 at 3-5.

[3] A warm market represents the group of customers or potential customers with whom the agent has an established personal or business relationship.

[4] Defendant's enforcement of these contract terms is alleged to constitute interference with his prospective economic relations; this claim is discussed at length later in this order.

4

>cancel contracts. And to sell them new contract for life you have to persuade them to – [...] to relinquish, lapse, or return the policy.

Docket No. 61-6, Batts Dep. at 336:8-21; *see also* Pl. Opp'n at 9 (citing the contract's "noncompetition clause" as a factor which made it impossible for him to be hired by another firm).

Finally, while defendant's alleged breach of contract may have impaired plaintiff's ability to retrieve his client database, plaintiff provides no evidence of damages arising from this specific harm.[5] In order to survive a motion for summary judgment, a plaintiff must introduce evidence sufficient to show that he suffered damages as a result of the breach. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). In California, "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." Cal. Civ. Code § 3301. Accordingly, defendant's motion for summary judgment is GRANTED as to plaintiff's claim for breach of contract.[6]

## II. Intentional Interference with Prospective Economic Relations

Plaintiff alleges that defendant's enforcement or threat of enforcement of the Agent Contract's noncompetition clause constituted intentional interference with prospective economic relations, because it prevented him from being hired by another insurance company for twenty-four months. Paragraph 24 of the Agent Contract provides:

>During the term of this Contract and for 24 months thereafter…the Agent shall not, personally or through the efforts of others, induce or attempt to induce…any policy holder of the Company to relinquish, surrender, replace, or lapse any policy issued by the Company.

Pl. Opp'n at 11; *see also* Docket No. 63, Exh. G.

---

[5] In any event, it is not clear that plaintiff could have "retrieved his client database," even with ample notice. Paragraph 22(c) requires that terminated employees "return to the Company any and all . . . lists, contact data, policyholder lists and other written or printed information in any way pertaining to the business of the Company."

[6] The Court therefore need not consider whether res judicata serves as an independent basis for dismissing plaintiff's breach of contract claim.

The elements of a cause of action for intentional interference with prospective economic relations are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. *Korea Supply Co, v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). In order to satisfy the third element, the plaintiff must plead and prove that "the defendant's conduct was 'wrongful by some legal measure other than the fact of interference itself.'" *Id.* at 1153-54. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1159.

Plaintiff argues that the non-competition clause is "independently wrongful" because it violates Cal. Bus. & Prof. Code § 16600, which provides: "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Since its enactment in 1872, "courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008); *see also* former Civ.Code, § 1673, repealed by Stats.1941, ch. 526, § 2, p. 1847. Agreements not to compete are therefore generally disfavored. *See Edwards* 44 Cal. 4th at 947 (holding invalid a noncompetition clause prohibiting plaintiff from providing professional services of the type he provided at his former employer to certain clients for 18 months, and from soliciting any former clients for 12 months); *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 243 (1965) (voiding "the provision forfeiting plaintiff's pension rights if he works for a competitor" as an unlawful restraint on employment). However, "[c]ourts are reluctant…to declare a contract void as

against public policy, and will refuse to do so if by any reasonable construction it may be upheld." *Vick v. Patterson*, 158 Cal. App. 2d 414, 417 (1958). "Whether or not a contract in any given case is contrary to public policy is a question of law, to be determined from the circumstances of each particular case." *Spangenberg v. Spangenberg*, 19 Cal. App. 439, 447, 126 (1912).

Defendant argues that paragraph 24 would only apply to a very small proportion of plaintiff's former clients and therefore falls within the "narrow-restraint exception" to section 16600 adopted by the Ninth Circuit. Docket No. 65, Def. Rep. at 6. However, the California Supreme Court has flatly rejected this interpretation; *Edwards* 44 Cal. 4th at 949-50 ("[N]o reported California state court decision has endorsed the Ninth Circuit's reasoning…Section 16600 is unambiguous, and if the Legislature intended the statute to apply only to restraints that were unreasonable or overbroad, it could have included language to that effect."), and it is axiomatic that this Court is bound to follow a state supreme court's interpretation of state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

More significantly, however, defendant argues that paragraph 24 only prohibits conduct which plaintiff could not lawfully have undertaken anyway. Def. Mot. at 17. Defendant correctly observes that paragraph 24 does not prohibit plaintiff from working for a competitor, from contacting or soliciting former clients, or from selling insurance policies to former clients. The noncompetition clause only prohibits plaintiff from inducing former Bankers Life clients to "relinquish, surrender, replace, or lapse any policy issued by [Bankers Life]." If plaintiff had undertaken such conduct, he would himself have been tortuously interfering with Bankers Life's contractual relations.[7] A contractual provision prohibiting such improper conduct does not violate

---

[7] In California, "the elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

7

section 16600. Accordingly, defendant's motion for summary judgment is GRANTED as to plaintiff's claim for intentional interference with economic relations.

### III. Fraud

Plaintiff alleges a cause of action for fraud. Docket No. 24, SAC ¶¶ 23-31. A claim of fraud must satisfy the following elements: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (1997) (citation omitted).

In the SAC, plaintiff describes alleged assurances made during pre-employment interviews that he would continue to receive certain forms of deferred compensation in the event he was terminated without cause. SAC ¶ 24. However, in his opposition brief, plaintiff fails to discuss this theory of misrepresentation or point the Court to any evidence which may support it. Instead, plaintiff's theory of misrepresentation is premised upon being fraudulently misled into believing that he could make as much as $120,000 as a first year employee at Bankers. Pl. Opp'n at 11. Again, plaintiff's brief is bereft of citation to any evidence supporting this contention. However, upon reviewing his deposition testimony, it appears that plaintiff believes that defendant is engaged in a scheme whereby it (1) hires new agents with the promise that it is possible to earn as much as $120,000 in their first year, (2) defendant profits from the short-term sales arising from

---

contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998), *citing Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). "Wrongfulness independent of the inducement to breach the contract is not an element of the tort of intentional interference with *existing* contractual relations". *Quelimane* 19 Cal. 4th at 55. (emphasis in original). The tort "does not require that the actor's primary purpose be disruption of the contract." *Id.* at 56; *see also Chambord Technologies, Inc. v. Arthur D. Little, Inc.*, No. B152529, 2006 WL 978990, at *19 (Cal. Ct. App. Apr. 14, 2006).

the new-hires' "warm markets," whereupon (3) the new-hires are discharged without cause within a few months, to prevent them from being eligible for the potential $120,000 payday. Batts Dep. 308:4-14, 313:6-18.

Defendant points out that Batts admits in his deposition that this theory is supported only by his own assumption based on knowledge that two other employees did not make $120,000 in their first year. *Id.* at 308:15-25, 313:19-314:10. Defendant additionally points to evidence showing that (1) managers at Bankers were awarded 30% of any commissions made by employees they supervised who worked for longer than three months, and were thereby incentivized to increase employee retention, and (2) that it was indeed possible for first year agents to make $120,000 in total compensation. *See* Def. Mot. at 22.

The moving party may prevail on summary judgment by showing that "the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000). "[C]onclusory, speculative testimony . . . is insufficient to raise genuine issues of fact and defeat summary judgment." *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Here, plaintiff's unsupported conspiracy theory is insufficient to raise a genuine issue of fact. Accordingly, the Court GRANTS defendant's motion for summary judgment as to plaintiff's claim of fraud.

**IV.    Order to Show Cause**

On December 1, 2014, defendant filed a motion seeking leave to file an objection to a declaration filed by plaintiff. Docket No. 67. The declaration in question was filed by plaintiff on November 24, 2014 – ten days after plaintiff's opposition brief, and three days after defendant's reply brief was submitted. Docket No. 66. Defendant contends that that plaintiff's declaration was

filed late in violation of Civil Local Rule 7-3(d), and should therefore not be considered for purposes of ruling on its motion for summary judgment. On December 29, 2014, the Court ordered plaintiff to show cause why he had failed to file his declaration in accordance with the Local Rules, and why it should not be stricken.

In his response to the Court's order, plaintiff claims that he attempted to file the declaration contemporaneously with his opposition brief on November 14, 2014. He contends that while he was able to file his opposition brief, his declaration was "rejected" by the system. He states that he thought he had fixed the issue and was able to successfully file the declaration on that same day. He claims to have not known or noticed that his declaration was never filed until defendant filed its reply brief 7 days later.

Plaintiff does not explain (1) why it took him three days after defendant filed its reply brief to file his declaration, (2) why his opposition brief contains no citations to the declaration,[8] given that he claims to have executed it prior to submitting his opposition brief, (3) why he failed to voluntarily come forward with any reason for his failure to comply with the Local Rules at the time of his tardy filing or in the intervening 29 days between defendant's objection and the Court's order to show cause.

The Court finds that plaintiff has not shown good cause for why he failed to timely file his declaration, and therefore STRIKES it from the record.

---

[8] The opposition brief refers to the existence of the declaration but makes no direct citations to it.

United States District Court  
Northern District of California

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. This order resolves Docket Nos. 61 and 67.

**IT IS SO ORDERED**.

Dated: January 13, 2015

_____
SUSAN ILLSTON
United States District Judge